Filed 6/24/19

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JOSUE GONZALEZ et al., | B284521 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 17STPB02129) |
| v. | |
| CITY NATIONAL BANK, as Trustee, etc., | |
| Defendant; | |
| STATE DEPARTMENT OF HEALTH CARE SERVICES, | |
| Claimant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lesley C. Green, Judge. Affirmed.

Barton, Klugman & Oetting and Thomas Beltran for Plaintiffs and Appellants Josue Gonzalez and Juanita Gonzalez Garcia.

No appearance by Defendant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim and Jacquelyn Y. Young, Deputy Attorneys General, for Claimant and Respondent State Department of Health Care Services.

—————————————

Josue Gonzalez and Juanita Gonzalez Garcia (Plaintiffs) appeal from the probate court order denying their request, following the death of their daughter, that the remainder of their daughter's special needs trust be distributed to them rather than to the Department of Health Care Services (Department) as reimbursement for Medi-Cal payments for their daughter's medical care. The court properly found the Department was entitled to reimbursement for these Medi-Cal expenses. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Special Needs Trust*

Brenda Gonzalez (Brenda or Beneficiary) suffered complications at birth that left her severely disabled. A medical malpractice lawsuit brought on Brenda's behalf yielded a $2.4 million settlement. On October 13, 1999, a federal district court placed these proceeds in a special needs trust (the Trust) pursuant to Probate Code sections 3604 and 3605, which allow courts to approve payment of settlements or judgments to special needs trusts established for minors or disabled persons.

The purpose of placing these proceeds in the Trust was to preserve Brenda's eligibility for Medi-Cal benefits while sheltering assets to be used for her special medical needs that

2

would not be covered by Medi-Cal.  The Trust thus sets forth that "[f]or purposes of determining the Beneficiary's Medi-Cal eligibility . . . no part of the principal or income of the trust estate shall be considered available to said Beneficiary."  The Trust provides that its "intent and purpose . . . is to provide a discretionary, spendthrift trust, to supplement public resources and benefits when such resources and benefits are unavailable or insufficient to provide for the Special Needs of the Beneficiary. . . .  This is not a trust for the support of the Beneficiary.  All payments made under this Trust must be reasonably necessary in providing for this Beneficiary's special needs . . . ."  The Trust further provides that "[t]he Beneficiary has no interest in the income or principal of the trust, other than as set forth herein," and "because this trust is to be conserved and maintained for the Special Needs of the Beneficiary, no part of the principal or income of the trust shall be construed to be part of the Beneficiary's 'estate.'"

The Trust was set up to terminate upon Brenda's death.  It sets forth that "[n]otwithstanding any provisions of this instrument to the contrary, this trust is subject to the provisions and requirements of California Probate Code Sections 3604 and 3605, which require that notice of the Beneficiary's death or the trust termination be given . . . to . . . [the Department]."  The Trust includes the following provision commonly referred to as a "payback" provision:  "In accordance with 42 U.S.C. § 1396p (d) (4) (A), upon termination, whether by death or otherwise, and after payment of provision has been made for expenses of administration, the remaining trust estate shall be payable to any state, or agency of a state, which has provided medical assistance to the Beneficiary under a state plan under

3

Title XIX of the Social Security Act [(SSA)], up to an amount equal to the total medical assistance paid on behalf of the Beneficiary under such state plan."  Only after such reimbursements to the state would any remaining funds be distributed to Brenda's legal heirs.

Tracking the requirements of Probate Code section 3604, subdivision (b), the federal district court's order establishing the Trust provides:  "Brenda Gonzalez is likely to have special needs related to her disability, as described in the Petition, that will not be met without the Trust," and "[t]he money to be paid to the Trust does not exceed the amount that appears reasonably necessary to meet her special needs."  The order reiterates that the Trust "shall be subject to the provisions and requirements of California Probate Code Sections 3604 and 3605."

2. *The Department's Claim for Reimbursement from the Trust for Medi-Cal Payments*

Brenda died on April 21, 2016, at age 21.  At the time of her death, approximately $1.6 million remained in the Trust.  The Department received notice of Brenda's death on or about April 22, 2016 and, on May 6, 2016, filed a creditor's claim with the probate court.  The creditor's claim sought reimbursement from the Trust for Medi-Cal payments for medical care for Brenda in the amount of $3,972,501.21.

3. *Petition Seeking Distribution of Trust Remainder to Heirs*

On March 10, 2017, Plaintiffs filed a petition seeking an order directing the trustee to distribute the Trust remainder to Plaintiffs, Brenda's heirs.  Relying on former Welfare and

4

Institutions Code section 14009.5, subdivision (b)(2)(c),[1] which sets forth the Department's right to reimbursement for Medi-Cal payments from deceased beneficiaries' estates, Plaintiffs argued that, because Brenda received the Medi-Cal services when she was under 55 years old, the Department had no right to recovery from the Trust remainder for those expenditures. In the alternative, Plaintiffs argued that the charges erroneously included medical expenses incurred prior to the establishment of the Trust, as well as expenses for special education services pursuant to the Individuals with Disabilities Education Act (IDEA) and regional center services pursuant to the Lanterman Developmental Disabilities Services Act (Lanterman Act).

The Department opposed the petition, contending federal and state law mandated it be reimbursed from the Trust for Brenda's Medi-Cal expenses and that former Welfare and Institutions Code section 14009.5 did not apply to limit the Department's recovery. The Department further argued it was not seeking reimbursement for services rendered before the Trust was created. Finally, the Department argued Plaintiffs had not carried their burden to prove Brenda received special education or regional center services and, in any event, the Department was entitled to recover for such services.

---

[1] References in our opinion to former Welfare and Institutions Code section 14009.5 are to the text of that statute as amended effective October 4, 1995. (Stats. 1995, ch. 548, § 2, pp. 4248-4249.)

The probate court denied the petition and ordered the trustee to pay the Department's creditor's claim of $3,972,501.21 from the remaining assets of the Trust.[2]

Plaintiffs timely filed a notice of appeal.

## DISCUSSION

Plaintiffs contend the Department has no right to reimbursement from the Trust remainder for Medi-Cal payments for medical services provided to Brenda. They assert that the Department's right to reimbursement is governed by the Medi-Cal provisions applicable to a decedent's estate, found at former Welfare and Institutions Code section 14009.5, which did not permit reimbursement for Medi-Cal payments where the decedent was under age 55 at the time the services were provided.

The Department asserts those provisions governing estates are inapplicable and special provisions applicable solely to special needs trusts give the Department a right of reimbursement. The proper resolution of this issue requires reconciliation of federal statutes governing Medicaid with state Medi-Cal statutes and regulations as well as provisions in the Probate Code. The two published decisions to date that endeavor to reconcile these federal and state laws, *Shewry v. Arnold* (2004) 125 Cal.App.4th 186 (*Shewry*) and *Herting v. State Dept. of Health Care Services* (2015) 235 Cal.App.4th 607, 609 (*Herting*), reach opposite conclusions.

I.  *Statutory Overview*

---

[2]     Obviously, the Department's actual recovery was limited to the amount remaining in the Trust—approximately $1.6 million.

6

A. *Medicaid and Medi-Cal*

"The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the [SSA], . . . 42 U.S.C. § 1396 *et seq*." (*Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268, 275 [126 S.Ct. 1752; 164 L.Ed.2d 459] (*Ahlborn*).) "[S]everely impaired individuals" are among those eligible for Medicaid assistance. (42 U.S.C. § 1396a(a)(10)(A)(i)(II)(bb);[3] *Belshe v. Hope* (1995) 33 Cal.App.4th 161, 173.)

"States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program." (*Ahlborn, supra,* 547 U.S. at p. 275; see *Herting, supra,* 235 Cal.App.4th at p. 610 ["'[a]lthough participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX,' many of which are set forth in . . . section 1396a et seq."]; *Will v. Kizer* (1989) 208 Cal.App.3d 709, 715 ["[t]he Federal Government shares the costs of Medicaid with States that elect to participate in the program. In return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services"].) Thus, "as a participant in the federal Medicaid program, the

---

[3]     All further undesignated statutory references are to title 42 of the United States Code.

State of California has agreed to abide by certain requirements imposed by federal law." (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 804 (*Olszewski*); see *Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 353; *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 757.)

"The California Medical Assistance Program, Medi-Cal (Welf. & Inst. Code, §§ 14000-14198), 'represents California's implementation of the federal Medicaid program . . . .'" (*Olszewski, supra*, 30 Cal.4th at p. 804.) "The Department is the single state agency designated to administer the Medi-Cal program." (*Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 751.)

B. *Treatment of special needs trusts under Medicaid/Medi-Cal*

A special needs trust is used to set aside assets to pay for the special medical needs of a severely disabled beneficiary. (*Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405.) The purpose of a special needs trust is "to enhance the beneficiary's quality of life through the purchase of additional goods and services that are not covered or adequately provided by SSI [(Supplemental Security Income)] and Medicaid." (Rosenberg, *Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest* (2000) 10 B.U. Pub. Int. L.J. 91, 94-95 (Rosenberg).) Prior to 1993, if a disabled person received a lump sum of money—such as the proceeds of a settlement or a judgment—and those assets were placed in a trust, the trust assets could render the disabled beneficiary ineligible for Medicaid due to these funds being considered an "available asset" for purposes of calculating eligibility. (Rosenberg, *supra*, 10 B.U. Pub. Int. L.J. at p. 95.) In

8

the Omnibus Budget Reconciliation Act of 1993 (OBRA) that revised the Medicaid system (Pub.L. No. 103-66, 107 (Aug. 10, 1993) Stat. 312), Congress aimed to remedy that problem, while also addressing the abusive use of trusts by wealthy older individuals.  (See *Belshe v. Hope*, *supra,* 33 Cal.App.4th at p. 175; *Lewis v. Alexander* (3d Cir. 2012) 685 F.3d 325, 343 (*Lewis*) [in enacting the OBRA, Congress's "primary objective was unquestionably to prevent Medicaid recipients from receiving taxpayer-funded health care while they sheltered their own assets for their benefit and the benefit of their heirs.  But its secondary objective was to shield special needs trusts from impacting Medicaid eligibility"]; Wiesner, *OBRA '93 and Medicaid: Asset Transfers, Trust Availability, and Estate Recovery Statutory Analysis in Context* (1995) 19 Nova L.Rev. 679, 682-683) [noting the OBRA's objective to reduce manipulation by "well-to-do elders" who were "obtaining public payment of their nursing home care while preserving their financial security and their ability to transmit wealth to younger generations"].)

Congress thus established a general rule that trust assets would be counted for purposes of determining Medicaid eligibility, but exempted qualifying special needs trusts from this general rule, with some conditions.  (§ 1396p(d)(1),(3),(4); see *Herting, supra*, 235 Cal.App.4th at p. 612.) Section 1396p(d)(4)(A) provides that in determining eligibility for Medicaid, states should *not* consider the assets in a trust established for "an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts

9

remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title."
(§ 1396p(d)(4)(A).)  Therefore, so long as the state will recover for the Medicaid services provided to the special needs trust beneficiary during her lifetime, the beneficiary remains eligible for such services, even if the amount in the trust otherwise would disqualify the beneficiary from receiving such benefits.  (See *McMillian v. Stroud* (2008) 166 Cal.App.4th 692, 695; *Herting,* at p. 610 [special needs trusts "enable a disabled person to qualify for Medi-Cal benefits by sheltering money that exceeds the limit of the individual's eligibility"].)

Federal law requires that "[a] State plan for medical assistance . . . comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain trusts."  (§ 1396a(a)(18); see *Citizens Action League v. Kizer* (9th Cir. 1989) 887 F.2d 1003, 1005.)  Under California law, for the purpose of determining eligibility for Medi-Cal, "resources shall be determined . . . in accordance with the federal law governing resources under Title XIX of the [SSA].  Resources exempt under Title XIX of the [SSA] shall not be considered in determining eligibility. . . .  Medically needy individuals and families may retain nonexempt resources to the extent permitted under Title XIX of the [SSA]."  (Welf. & Inst. Code, § 14006, subd. (c).)  Thus, the requirements of section 1396p(d) govern whether trust assets are properly considered in determining a trust beneficiary's eligibility for Medi-Cal.  California regulations also provide that for a qualifying special needs trust to be considered "not available" when determining Medi-Cal eligibility,

10

the trust must be set up so that "the State receives all remaining funds in the trust, or respective portion of the trust, upon the death of the individual or spouse or upon termination of the trust up to an amount equal to the total medical assistance paid on behalf of that individual by the Medi-Cal program." (Cal. Code Regs., tit. 22, § 50489.9, subds. (a)(3)(C), (b)(2).)

Sections 3604 and 3605 of the Probate Code, enacted in 1992 and effective as of January 1, 1993, govern special needs trusts established by a court after it approves a monetary settlement or enters a judgment that includes monetary damages for a minor or a person with a disability. (Prob. Code, §§ 3600, 3604, 3605.) Thus, "when a court approves a settlement of an action to which an incompetent person is a party, the conservator may petition the court for an order that money owed to the incompetent person pursuant to the settlement not become part of the conservatorship estate, but instead be paid to a special needs trust established under Probate Code section 3604." (*Shewry, supra*, 125 Cal.App.4th at p. 194.)

Pursuant to Probate Code section 3604, "[a] special needs trust may be established and continued under this section only if the court determines all of the following: [¶] (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap. [¶] (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust. [¶] (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the

11

minor or person with a disability."[4]  (Prob. Code, § 3604, subd. (b); *Herting, supra,* 235 Cal.App.4th at p. 610; *Conservatorship of Kane, supra,* 137 Cal.App.4th at pp. 405-406.)

Probate Code section 3605 provides that "[n]otwithstanding any provision in the trust instrument, at the death of the special needs trust beneficiary or on termination of the trust, the trust property is subject to claims of the [Department], the State Department of State Hospitals, the State Department of Developmental Services, and any county or city and county in this state *to the extent authorized by law as if the trust property is owned by the beneficiary or is part of the beneficiary's estate.*" (Prob. Code, § 3605, subd. (b), italics added.)

The California Law Revision Commission Comment to Probate Code section 3605 states in part, "On the death of the special needs trust beneficiary or on termination of the trust, trust property may become subject to reimbursement claims under federal or state law.  See, e.g., 42 U.S.C. § 1396p(b)(1)(B) (Medicaid); Welf. & Inst. Code § [] 14009.5 (Medi-Cal) . . . .  For this purpose and only this purpose, the trust property is treated

---

[4]      Probate Code section 3604 also includes a requirement that "[a] court order under [Probate Code] Section 3602 or 3611 for payment of money to a special needs trust shall include a provision that all statutory liens in favor of the [Department], the State Department of State Hospitals, the State Department of Developmental Services, and any county or city and county in this state shall first be satisfied."  (Prob. Code, § 3604, subd. (d).) The district court's order establishing the Trust included this required provision.  Because this provision concerns liens in existence *prior to* the creation of the special needs trust, as opposed to claims for reimbursement after a beneficiary's death, it is not applicable in this matter.

as the beneficiary's property or as property of the beneficiary's estate." (Cal. Law Revision Com. com., 52B West's Ann. Prob. Code (2009 ed.) foll. § 3605, p. 154.)

C. *Estate recovery provisions of Medicaid and Medi-Cal*

As part of the OBRA, "Congress enabled states to recover the costs for medical services from the estate of the former recipient. (42 U.S.C. § 1396p(b)(1)(B).)"[5] (*Bontá v. Burke* (2002) 98 Cal.App.4th 788, 789 (*Burke*).) "In compliance with federal law, state law requires the [Department] to seek reimbursement from the deceased recipient's estate," except in certain enumerated circumstances.[6] (*Maxwell-Jolly v. Martin, supra,*

---

[5] The purpose of the mandatory estate recovery provision included in the OBRA was "'to counterbalance rocketing Medicaid expenditures and overall budget and deficit reductions. [Citation.] Congress sought a way to stymie the growth in state Medicaid expenditures without depriving eligible recipients of much-needed care. [Citation.] Thus, although states could allow Medicaid recipients to retain their homes during their lifetime, Congress began requiring states to recoup benefits from the estates of certain deceased Medicaid recipients as a condition of receiving Medicaid funds. [Citations.]' [Citation.] Specifically, OBRA '93 required each state to include in its state plan a provision for making recoveries from the estates of specified classes of Medicaid recipients. (42 U.S.C. § 1396p(b)(1).) States that fail to do so risk losing all or part of their Medicaid funding. (42 U.S.C. § 1396c.)" (*California Advocates for Nursing Home Reform v. Bontá* (2003) 106 Cal.App.4th 498, 508-509.)

[6] "According to federal law, the term 'estate,' with respect to a deceased individual, '(A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and [¶] (B) may include, at the option of the State . . . any other real and personal property and other assets in which the individual had any legal

13

198 Cal.App.4th at p. 353; see *Burke, supra,* 98 Cal.App.4th at p. 792.)

Whereas subdivision (d) of section 1396p concerns the treatment of trust assets, subdivision (b) of section 1396p sets forth the circumstances in which a state must or must not seek reimbursement from the estate of a deceased recipient of Medicaid services.  As relevant here, section 1396p(b) provides: "(1)  No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:  [¶] . . . [¶]  (B)  In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate . . . ."  (§ 1396p(b)(1)(B).)

Tracking these federal requirements, former Welfare and Institutions Code section 14009.5 generally prohibits the Department from seeking reimbursement for Medi-Cal expenditures from the estate of a decedent who was under age 55 when services were received.  (Former Welf. & Inst. Code,

---

title or interest at the time of death (to the extent of such interest) . . . .  (42 U.S.C. § 1396p(b)(4).)"  (*Burke, supra,* 98 Cal.App.4th at p. 790.)  "California utilizes the federal definition of 'estate'" (*ibid.*), so that "estate" is defined as "all real and personal property and other assets in which the decedent had any legal title or interest at the time of death (to the extent of such interest) . . . ."  (Cal. Code Regs., tit. 22, § 50960.12, subd. (a).)

14

§ 14009.5, subds. (a), (b).)[7]  A "decedent" is defined as "a
beneficiary who has received health care under this chapter . . .
and who has died leaving property to others either through
distribution or survival."  (*Id.*, subd. (d)(1).)

II. *Standard of Review*

"[I]n reviewing a trial court's interpretation of a statute, we
apply a de novo, or independent, standard of review.  [Citation.]
In independently interpreting a statute, our task is to ascertain
and effectuate the law's intended purpose.  [Citation.]  In
interpreting a statute, we look first to the statute's words.
[Citation.]  The statutory language is generally the most reliable
indicator of legislative intent.  [Citations.]  If the statutory
language is unambiguous, we will presume the Legislature
meant what it said and the plain meaning of the statute will
prevail unless its literal meaning would result in absurd

---

[7]     Former Welfare and Institutions Code section 14009.5 thus
provides in pertinent part: "(a) . . . [T]he department shall claim
against the estate of the decedent, or against any recipient of the
property of that decedent by distribution or survival an amount
equal to the payments for the health care services received or the
value of the property received by any recipient from the decedent
by distribution or survival, whichever is less.  [¶]  (b)  The
department may not claim in any of the following circumstances:
[¶]  (1)  The decedent was under 55 when services were
received . . . ."  (Former Welf. & Inst. Code, § 14009.5,
subds. (a), (b)(1).)

Both section 1396p(b) and former Welfare and Institutions
Code section 14009.5 also prohibit the Department from seeking
reimbursement from a decedent's estate during a surviving
spouse's lifetime or where the decedent has a child who is blind,
disabled, or under 21 years of age.  (§ 1396p(b)(2)(A); former Welf.
& Inst. Code, § 14009.5, subd. (b)(2)(A), (B), (C).)

15

consequences that the Legislature did not intend. [Citations.] [¶] However, if the statutory language is ambiguous and is reasonably susceptible to more than one meaning, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citation.] Our ultimate objective in interpreting a statute is to construe

the statute in a way that most closely comports with the apparent intent of the Legislature." (*People v. LaDuke* (2018) 30 Cal.App.5th 95, 100.)

"'"We consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."'" (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540.) "We examine the statutes . . . with other legislation on the same subject. [Citation.] If they conflict on a central element, we strive to harmonize them so as to give effect to each." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310.)

III. *Pertinent Authority*

Relying in part on the Court of Appeal's analysis in *Shewry*, discussed further below, Plaintiffs focus primarily on the portion of Probate Code section 3605 providing that special needs trust property is "subject to claims of the [Department] . . . *to the extent authorized by law as if the trust property is owned by the beneficiary or is part of the beneficiary's estate*." (Prob. Code, § 3605, subd. (b), italics added.) Because Probate Code section 3605 directs that special needs trust assets be treated as part of the beneficiary's estate, they contend the probate court should have applied the estate recovery rules under former Welfare and Institutions Code section 14009.5, under which assets from the estate of a deceased Medi-Cal beneficiary under age 55 are exempt from recovery.

By contrast, the Department contends that section 1396p mandates special treatment of the remainders of special needs trusts, so that instead of being subject to the reimbursement rules for a Medi-Cal beneficiary's estate, a blanket mandatory

17

reimbursement rule applies to the assets remaining in all such trusts, up to the amount paid by Medi-Cal for the beneficiary during her lifetime, no matter her age when she received the services. The Department relies on the analysis and holding of *Herting*, which is squarely on point but reaches a different conclusion than *Shewry*.

A. <u>*Shewry v. Arnold*</u>

In *Shewry*, the Department sought reimbursement from the assets of a special needs trust for health services paid for by Medi-Cal, after the trust's beneficiary passed away. (*Shewry, supra*, 125 Cal.App.4th at p. 191.) The trust instrument in *Shewry* provided that on the death of the beneficiary, the remaining principal and income was to be distributed to the beneficiary's only living child, Brenda Arnold, after "'[a]ll valid liens'" in favor of the Department and other entitled agencies had been "'satisfied,'" "'even to the extent of exhausting any remaining [principal] or income.'" (*Id.* at pp. 191-192.) After the beneficiary died, Arnold, who herself was permanently disabled, withdrew the remaining money in the trust—approximately $284,000. The Department demanded Arnold pay it approximately $90,000 for Medi-Cal expenses incurred for her mother. After Arnold refused, the Department filed suit against her, as the recipient of property from a Medi-Cal beneficiary, to enforce and collect money due on a creditor's claim pursuant to Probate Code section 3605. The Department filed a motion for summary judgment, which was granted, and the court ordered Arnold to pay the Department its full claim. (*Shewry*, at p. 192.)

On appeal, Arnold argued that after the beneficiary's death, "the remaining assets of the special needs trust were treated as part of the [the beneficiary's] estate, and the property

18

of an estate that is distributed to a decedent's adult disabled child is exempt from Medi-Cal reimbursement claims" under section 1396p(b)(2)(A) and former Welfare and Institutions Code section 14009.5, subdivision (b)(2)(C).[8] (*Shewry, supra,* 125 Cal.App.4th at p. 196.) The Department contended that reimbursement of its Medi-Cal payments for the beneficiary was required based on subdivision (d) of section 1396p, which provides that amounts in such trusts will not be considered for purposes of Medicaid eligibility "if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title." The Department emphasized that Medi-Cal is required to comply with this federal Medicaid requirement, and contended that "the assets of a special needs trust may be disregarded for purposes of Medi-Cal eligibility only if the state is assured of reimbursement from any remaining assets." (*Shewry*, at p. 196.)

Our colleagues in Division Five rejected the Department's position as "not persuasive," and instead held the more limited reimbursement provisions set forth in former Welfare and Institutions Code section 14009.5 applied because the assets in the special needs trust are deemed part of the beneficiary's estate. (*Shewry, supra,* 125 Cal.App.4th at p. 197.) The court relied on subdivision (b) of Probate Code section 3605, which

---

[8]     The exemption for services to a beneficiary under 55 years old, invoked by Plaintiffs in the instant case, is set forth in the same federal and state provisions as the exemption applicable where the deceased beneficiary has a surviving adult disabled child. (See § 1396p(b)(1)(B); Welf. & Inst. Code, § 14009.5, subd. (b)(1).)

19

provides that "the trust property is subject to the claims of the
. . . Department . . . to the extent authorized by law *as if the trust
property is owned by the beneficiary or is part of the beneficiary's
estate.*" (Prob. Code, § 3605, subd. (b), italics added.)  The court
also noted the Law Revision Commission comment to Probate
Code section 3605 providing in pertinent part:  "'On the death of
the special needs trust beneficiary or on termination of the trust,
trust property may become subject to reimbursement claims
under federal or state law.  [(See, e.g., *42 U.S.C. § 1396p(b)(1)(B)*
[*Medicaid*]; *Welf. & Inst. Code* §[] *14009.5* [*Medi-Cal*] . . .).]  *For
this purpose and only this purpose, the trust property is treated as
the beneficiary's property or as property of the beneficiary's
estate. . . .*'  (Cal. Law Revision Com. com., . . . Prob. Code
(2005 supp.) foll. § 3605, p. 42.)"  (*Shewry*, at p. 195, italics
added.)

The court reasoned as follows:  "The provisions of
subdivision (d) [of section 1396p] relate to eligibility for medical
assistance.  In determining an individual's eligibility for state
medical assistance, the assets of a special needs trust are to be
disregarded if the state is entitled to be reimbursed from the
trust.  The nature of that right to reimbursement is not set forth
in subdivision (d).  Reimbursement provisions are found in
subdivision (b), which expressly excludes assets distributed to an
adult disabled child.  These reimbursement provisions are
generally applicable to all reimbursement for medical assistance
payments.  The Department has put forth no persuasive
argument that reimbursement from special needs trusts should
be treated differently than other reimbursements.  We conclude
such trusts should not be treated differently.  Thus, qualification
of a state plan for medical assistance under the federal Medicaid

20

provisions does not require reimbursement from special needs trust assets distributed to an adult disabled child.

"The analysis is similar under California law. The assets of a special needs trust are disregarded in determining an individual's eligibility for Medi-Cal benefits. Upon the death of the beneficiary of a special needs trust, any remaining assets in the trust are treated as part of the beneficiary's estate for purposes of Medi-Cal reimbursement. (Prob. Code, § 3605, subd. (b).) The Department may not seek Medi-Cal reimbursement from the estate of a decedent if there is a surviving child who is permanently and totally disabled. (Welf. & Inst. Code, § 14009.5, subd. (b)(2)(C).)

"The clear and unambiguous language of the special needs trust and Medi-Cal reimbursement statutes establishes that upon the death of a special needs trust beneficiary, any remaining trust assets are treated as part of the beneficiary's estate and distributions from the estate to the decedent's adult disabled child are exempt from the Department's reimbursement claims. The clear language of the statutes is also supported by the comment of the Law Revision Commission to Probate Code section 3605. . . .

"This construction of the statutes also comports with sound public policy. Special needs trusts cannot be used to shelter excessive assets, because the probate court will approve only the amount that appears reasonably necessary to meet the special needs of the incompetent person. Both the federal and state Legislatures have determined that distributions from estates to adult disabled children should be exempt from Medi-Cal reimbursement claims because enforcement of such claims would likely result in hardship. We can discern no reason that the

21

remaining assets of a court-approved special needs trust should be treated differently than any other assets of an estate." (*Shewry*, *supra,* 125 Cal.App.4th at pp. 197-198.)  The court thus held that "upon the death of the beneficiary of a special needs trust, any remaining trust assets are treated as part of the beneficiary's estate pursuant to Probate Code section 3605, subdivision (b)." (*Id.* at p. 191.)

       B. <u>*Herting v. State Dept. of Health Care Services*</u>

       In *Herting*, the superior court established a special needs trust on behalf of 19-year-old Alexandria with proceeds from the settlement of a negligence claim against third parties.  (*Herting, supra*, 235 Cal.App.4th at pp. 610-611.)  The trust instrument stated that its purpose was "'to provide for the special needs of the Beneficiary, a disabled adult. . . .  The Beneficiary either receives or is entitled to receive public benefits on account of her disabilities.  In general, this trust is therefore intended to supplement, and not to supplant, the public benefits that would be available to the Beneficiary if this trust did not exist.'" (*Id.* at p. 616, fn. 5.)  Further, the trust provided:  "'It is the intention of this trust to satisfy Medi-Cal and [SSI] program requirements so that its establishment and funding do not prejudice the Beneficiary's eligibility for such public benefits.'" (*Id.* at p. 616.)  The court noted "the trust expressly stated that it complied with section 1396p(d)(4)(A), Probate Code sections 3600-3613, and California Code of Regulations, title 22, section 50489.9, subdivision (a)(3).  Accordingly, in the trust directions for administration upon the beneficiary's death, article seven, section 1, prescribed the order of distribution of trust assets, '[s]ubject to' state notice and reimbursement requirements.  Those requirements were delineated in the 'Notice and Payback

Provisions' section of article seven, which acknowledged that compliance with section 1396p(d)(4)(A) and California Code of Regulations, title 22, section 50489.9 was mandatory in order to enable Alexandria to maintain her eligibility for Medi-Cal. After giving the Department notice of the beneficiary's death, the trustee was required to '*first distribute to [the Department]*, then to any other appropriate state agency entitled to Medi-Cal reimbursement from the remaining principal and income of this trust, up to the amount remaining in this trust, an amount equal to the total medical assistance paid on behalf of the Beneficiary by the Medi-Cal program.'" (*Id.* at p. 616.)

After Alexandria's death at age 23, the Department sought approximately $417,000 for Medi-Cal payments from remaining trust assets of approximately $1.3 million. (*Herting, supra*, 235 Cal.App.4th at pp. 609, 611.) The trustee invoked the Medicaid and Medi-Cal estate reimbursement provisions of section 1396p(b)(1)(B) and former Welfare and Institutions Code section 14009.5, subdivision (b)(1), to argue "the trust assets were exempt from the Department's reimbursement rights because the beneficiary was under 55 years of age when the services were provided." (*Herting*, at pp. 609, 611.) After the superior court agreed with the Department's position and ordered the trust to reimburse the Department, the trustee appealed. (*Id.* at p. 612.)

The Sixth District affirmed the superior court's order. Unlike the *Shewry* court, the court concluded that the applicable Medicaid and Medi-Cal provisions were "not those pertaining to *estate* recovery but those governing establishment of special needs trusts and recovery from those trusts upon the beneficiary's death." (*Herting, supra*, 235 Cal.App.4th at p. 614.) Under the latter provisions, the court held, the Department was

23

entitled to reimbursement of the medical expenses it paid, notwithstanding that Alexandria was under age 55 when she received the services. (*Id.* at p. 609.)

The court set forth the following reasoning: "Alexandria's trust was not estate property but an instrument created for the specific and exclusive purpose of ensuring that she qualify for Medi-Cal benefits and have enough resources to supplement those benefits and enhance her compromised quality of life. . . . [S]ection 1396p(d)(4)(A), recognizes special needs trusts for Medicaid eligibility purposes *if* the individual is under 65 and disabled *and if* the state will be reimbursed for the amount it paid for the individual's medical care. . . . Alexandria's trust would not have been approved by the court had it not contained the condition required in section 1396p(d)(4)(A). It is through this condition that the device of the special needs trust 'strikes a balance between the private interest of the Medicaid recipient in having a supplemental source of support and the public interest in recovering the costs of Medicaid expenditures.' (*Rosenberg, supra*, at p. 136.)

"Likewise, in California, the applicable Medi-Cal provisions are not those pertaining to *estate* recovery but those governing establishment of special needs trusts and recovery from those trusts upon the beneficiary's death. . . . Probate Code section 3605 . . . describes the procedure to be followed upon the death of the special needs trust beneficiary. Subdivision (b) of that statute provides, in pertinent part, 'Notwithstanding any provision in the trust instrument, at the death of the special needs trust beneficiary or on termination of the trust, the trust property is subject to claims of the State Department of Health Care Services, the State Department of State Hospitals, the State

24

Department of Developmental Services, and any county or city and county in this state to the extent authorized by law as if the trust property is owned by the beneficiary or is part of the beneficiary's estate.'  The remaining subdivisions prescribe the notice that the trustee must give to the Department, the four-month period in which the Department may claim reimbursement from the trustee, the circumstances under which the statute of limitations is tolled with respect to the Department's claim, and the consequences of the trustee's distribution before the Department's four-month period has expired.  No exception is stated for claims against a trust created for a beneficiary under age 55. . . .  The Department's claim was authorized by Probate Code section 3605.

"California Code of Regulations, title 22, section 50489.9 reflects this legislation:  It states that a special needs trust properly constituted (i.e., established by a parent, grandparent, legal guardian, or, as here, a court, for the benefit of a disabled individual under 65) shields the trust assets if '[t]he State receives all remaining funds in the trust, or respective portion of the trust, upon the death of the individual or spouse or upon termination of the trust up to an amount equal to the total medical assistance paid on behalf of that individual by the Medi-Cal program.'  (*Id.*, subd. (a)(3)(C).)  Thus, to be approved by the court Alexandria's trust had to contain a payback provision in compliance with the federal and state statutes under which her eligibility for assistance was established.  Had the trust not contained that provision, all of the settlement funds would have been deemed available for her care, thereby disqualifying her from public assistance."  (*Herting, supra,* 235 Cal.App.4th at pp. 614-615, fns. omitted.)

The court also concluded that "[t]he terms of Alexandria's trust fully conformed to the federal and state law discussed above. Clearly its central purpose was to ensure the availability of resources for Alexandria's care, not to serve as an estate planning device." (*Herting, supra,* 235 Cal.App.4th at pp. 615-616, fn. omitted.) The court noted the trust's expression of its intention to comply with the federal and state law provisions governing special needs trusts, and the directions to the trustee to first distribute to the Department and then to any other agency entitled to Medi-Cal reimbursement, "up to the amount remaining in this trust, an amount equal to the total medical assistance paid on behalf of the Beneficiary by the Medi-Cal program." (*Id.* at p. 616.)

The court recognized that "[t]he California Law Revision Commission comment to Probate Code section 3605 may appear to support [the trustee's] position by stating, 'On the death of the special needs trust beneficiary or on termination of the trust, trust property may become subject to reimbursement claims under federal or state law [(including Medicaid and Medi-Cal)]. . . . For this purpose and only this purpose, the trust property is treated as the beneficiary's property or as property of the beneficiary's estate.' [Citation.] We do not read this comment, made before the enactment of OBRA '93 . . . , as a declaration that specific statutes and regulations governing government claims against special needs trusts may be disregarded simply by calling the trust assets estate property." (*Herting, supra,* 235 Cal.App.4th at p. 615, fn. 4.) "That the provision [Probate Code section 3605, subdivision (b)] contains the words 'as if the trust property is owned by the beneficiary or is part of the beneficiary's estate' does not warrant engrafting

26

estate-recovery text onto a statute specifically targeted to special needs trusts."  (*Id.* at p. 615.)

The court addressed the holding of *Shewry*, stating, "We depart from *Shewry* only insofar as it generally interprets the Medicaid and Medi-Cal statutes to deem the assets of any special needs trust to be part of a beneficiary's estate after death. . . . The statutes and regulations governing recovery from a special needs trust do not exempt beneficiaries under age 55, either directly or by making them 'subject to' the *estate* recovery provisions.  Nor do we see a public policy reason in this case to shield the trust assets from recovery so that the $417,812.43 spent by the public can pass to Alexandria's parents along with the rest of the trust assets.  Such a result would contravene both the text of the provisions discussed above and the clear intent of Congress and our Legislature."  (*Herting, supra*, 235 Cal.App.4th at pp. 617-618.)

IV.  *The Mandatory Recovery Rules for Special Needs Trusts Apply to the Trust Remainder*

A.  *Application of federal and state provisions*

As discussed above, section 1396a requires that Medi-Cal provisions "comply with the provisions of section 1396p of this title with respect to . . . recoveries of medical assistance correctly paid . . . and treatment of certain trusts."  (§ 1396a(a)(18).)  Under section 1396p, "trust assets do not affect the beneficiary's [M]edicaid eligibility as long [as] the trust contains a 'payback' provision allowing trust assets remaining upon the recipient's death to be used to reimburse the state for the total medical assistance it provided to the trust beneficiary.  See 42 U.S.C. § 1396p(d)(1), (4)."  (*Sullivan v. County of Suffolk* (2d Cir. 1999) 174 F.3d 282, 285.)  While the OBRA provides that qualifying

27

special needs trusts will *not* be considered for purposes of determining Medicaid eligibility "if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title" (§ 1396p(d)(4)(A)), such special needs trusts necessarily *may* be considered in determining eligibility for Medicaid if the state will *not* receive all amounts up to an amount equal to the total medical assistance paid.  Like the court in *Herting*, *supra*, 235 Cal.App.4th 607, we conclude that section 1396p(d)(4)(A) mandates that the Department seek recovery of the total medical assistance paid for by Medi-Cal on behalf of the beneficiary of a special needs trust.  (See also *Lewis, supra*, 685 F.3d at p. 349 ["§ 1396p(d)(4)(A) and (B) require repayment [to the Department] up to the total amount expended for medical assistance"].)[9]

California law explicitly acknowledges that, for the purpose of determining eligibility for Medi-Cal, federal Medicaid standards apply.  (Welf. & Inst. Code, § 14006, subd. (c) [whether resources are exempt under the Medicaid Act is determined in accordance with the federal law governing resources under that act].)  It is well-understood that "[r]ecovery from Medicaid beneficiaries must be made in accordance with federal Medicaid

---

[9] In concluding that the estate recovery provisions of former Welfare and Institutions Code section 14009.5 apply to the residual assets in special needs trusts, the court in *Shewry* held that section 1396p(d)(4)(A) sets forth only eligibility requirements, not reimbursement rules.  (*Shewry, supra,* 125 Cal.App.4th at p. 197.)  We disagree with *Shewry*'s interpretation of section 1396p(d), which Plaintiffs do not espouse.

28

law, because federal Medicaid law controls." (*Lopez v. DaimlerChrysler Corp.* (2009) 179 Cal.App.4th 1373, 1380.)

California regulations reflect that in order for assets in a special needs trust not to be counted in determining if the beneficiary is eligible for Medi-Cal, the trust must include a mandatory payback provision (like the one in the Trust) stating that at the death of the beneficiary the state will be reimbursed from the trust remainder for the Medi-Cal expenses incurred. (Cal. Code Regs., tit. 22, § 50489.9, subds. (a)(3)(C), (b)(2) [for special needs trust to be considered "not available" when determining Medi-Cal eligibility, trust must be set up so that "the State receives all remaining funds in the trust, or respective portion of the trust, upon the death of the individual or spouse or upon termination of the trust up to an amount equal to the total medical assistance paid on behalf of that individual by the Medi-Cal program"].)  And Probate Code section 3605 provides that, at the death of the beneficiary, the property of a special needs trust is subject to claims of the Department and other state agencies. (Prob. Code, § 3605, subd. (b).)

B. *Plaintiffs' interpretation of Probate Code section 3605 conflicts with federal law*

Plaintiffs contend that the rights of state agencies to reimbursement from special needs trust remainders is qualified by additional language in Probate Code section 3605, subdivision (b), providing that the trust property is subject to agencies' claims "to the extent authorized by law as if the trust property is owned by the beneficiary or is part of the beneficiary's estate."  (Prob. Code, § 3605, subd. (b).)  Supporting their argument are the Comments of the Law Revision Commission, which state, "On the death of the special needs trust beneficiary

29

. . . trust property may become subject to reimbursement claims under federal or state law. See, e.g., 42 U.S.C. § 1396p(b)(1)(B) (Medicaid); Welf. & Inst. Code § [] 14009.5 (Medi-Cal) . . . . For this purpose and only this purpose, the trust property is treated as the beneficiary's property or as property of the beneficiary's estate."[10] (Cal. Law Revision Com. com., 52B West's Ann. Prob. Code, *supra*, foll. § 3605, p. 154.) Plaintiffs read Probate Code section 3605 as incorporating former Welfare and Institutions Code section 14009.5, which governs reimbursement of Medi-Cal expenses from beneficiaries' estates and generally bars the Department from claiming against an estate where the beneficiary was under age 55 when she received her Medi-Cal services. (Former Welf. & Inst. Code, § 14009.5, subd. (b)(1).)

Plaintiffs argue that although Probate Code section 3605 (as they interpret it) represents a "departure" from the mandatory federal reimbursement provision of section 1396p(d)(4)(A), the State of California has "latitude" to implement its Medi-Cal plan in a manner that does not afford the Department a right of reimbursement from all qualifying special needs trusts created under Probate Code sections 3604 and 3605. They rely on the principle that "'[t]he [Medicaid] program was designed to provide the states with a degree of flexibility in designing plans that meet their individual needs,'" requiring that states be "'given considerable latitude in formulating the terms of their own medical assistance plans.'" (*Olszewski*, *supra*, 30 Cal.4th at p. 810.)

---

[10] Although the Law Revision Commission's comments are not binding, they are entitled to substantial weight in construing the statute. (*People v. Garfield* (1985) 40 Cal.3d 192, 199; *Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 249.)

We disagree that the flexibility afforded to states to design their Medicaid plans extends to the standards for reimbursement from a special needs trust, which standard Congress specifically designed as part of the OBRA. Were we to construe Probate Code section 3605, subdivision (b) to conflict with sections 1396a and 1396p(d)(4)(A) of the federal Medicaid statute, we would have to find the Probate Code provision preempted and unenforceable. (*Olszewski*, *supra*, 30 Cal.4th at pp. 814-815 [state statute is preempted to the extent it actually conflicts with federal Medicaid law]; *Citizens Action League v. Kizer, supra*, 887 F.2d at pp. 1006, 1008 [finding older version of Welfare and Institutions Code section 14009.5 "impermissibly broad" and "inconsistent with federal Medicaid law" in class action challenging the Department's practice of recovering costs of Medi-Cal benefits from former joint tenants of deceased recipients]; *Disabled & Blind Action Committee of Cal. v. Jenkins* (1974) 44 Cal.App.3d 74, 78 ["It goes without saying that in the public assistance area, California's legislation must not be inconsistent with federal legislation"].)

"A state law actually conflicts with federal law 'where it is impossible for a private party to comply with both state and federal requirements [citation], or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."' [Citation.] 'What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" (*Olszewski, supra*, 30 Cal.4th at pp. 814-815, 826 [concluding California's lien statutes permitting healthcare providers to recover from Medi-Cal beneficiaries were invalid because they conflicted with federal Medicaid law that prohibits

31

providers from attempting to obtain payment directly from beneficiaries]; see *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Commission* (1983) 461 U.S. 190, 203-204 [103 S.Ct. 1713, 75 L.Ed.2d 752].)

"When determining the preemptive effect of federal law, we are guided by the United States Supreme Court's 'oft-repeated comment . . . that "[t]he purpose of Congress is the ultimate touchstone" in every pre-emption case.' [Citation.] 'Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the "statutory framework" surrounding it.' [Citation.] 'Also relevant, however, is the "structure and purpose of the statute as a whole," [citation] as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" (*Olszewski, supra*, 30 Cal.4th at pp. 816-817.)

In *Lewis, supra*, 685 F.3d 325 the Third Circuit Court of Appeals analyzed whether a Pennsylvania statute dealing with another particular type of trust, a "pooled" special needs trust, was preempted by an OBRA provision regulating the reimbursement rules for such trusts. The Pennsylvania statute guaranteed the state at least 50 percent reimbursement for Medicaid expenses from "pooled" special needs trust remainders, while section 1396p(d)(4)(C)(iv) provided that pooled special needs trusts could retain up to 100 percent of the trust remainder upon the death of the disabled beneficiary, in which case the

state would receive no portion of the residual.[11] (*Lewis,* at pp. 333-335, 348.)

The court concluded Congress had an "overarching intent" in enacting the trust-counting provisions and the special needs trust exemptions in the OBRA. (*Lewis, supra,* 685 F.3d at p. 347.) "Congress provided a comprehensive system for dealing with the relationship between trusts and Medicaid eligibility. . . . Congress made a deliberate choice to expand the federal role in defining trusts and their effect on Medicaid eligibility. . . . [¶] [It] made a specific choice to expand the types of assets being treated as trusts and to unambiguously require States to count trusts against Medicaid eligibility. Its primary objective was unquestionably to prevent Medicaid recipients from receiving taxpayer-funded health care while they sheltered their own assets for their benefit and the benefit of their heirs. But its secondary objective was to shield special needs trusts from impacting Medicaid eligibility. And the Supreme Court has emphasized the importance of giving full effect to all of Congress' statutory objectives, as well as the specific balance struck among them." (*Id.* at p. 343.)

The court determined that whereas Congress provided for full reimbursement to state agencies for Medicaid expenses under the special needs trust exemption of section 1396p(d)(4)(A) (the type of trust at issue in our case), Congress made plain its intent to treat pooled special needs trusts differently by giving charitable organizations the discretion to retain the remainder of a beneficiary's account for the benefit of other disabled

---

[11] A pooled special needs trust contains separate accounts established for the benefit of multiple disabled individuals and is managed by a nonprofit association. (§ 1396p(d)(4)(C).)

beneficiaries in the same pooled trust. Pennsylvania's law permitting nonprofit organizations to retain a maximum of 50 percent of the trust remainder ran counter to this clear intent, and, accordingly, it was preempted. (*Lewis, supra*, 685 F.3d at p. 349.)

We agree with the Third Circuit's analysis of Congress's intent in enacting the specific exemptions for special needs trusts, and its intention to precisely regulate reimbursements from such trusts for Medicaid expenditures. The quid pro quo for not considering assets in a special needs trust for Medi-Cal eligibility purposes is that any assets remaining in such a trust at the death of the beneficiary must be used to reimburse the state for its Medi-Cal expenses on behalf of the beneficiary. (See *Corp. of Guardianship, Inc. v. Brajer* (M.D.N.C. Mar. 21, 2016, No. 1:15CV245) 2016 U.S. Dist. Lexis 35960, *16, fn. 3 ["§ 1396p(d) allows a benefit—the right of the beneficiary to accept and use trust proceeds while continuing to receive medical assistance benefits—that is virtually unique in the statutory scheme. . . . In light of the fact that the prior statutory scheme would have required a disabled individual to either accept trust benefits while relinquishing medical assistance benefits or decline the trust benefits, the rational basis for the statutory compromise is self-evident"].) Section 1396p(d)(4)(A) does not explicitly or implicitly permit a qualification that the Department be reimbursed only for services provided to a beneficiary over the age of 55. Accordingly, construing Probate Code section 3605 to require such a qualification would lead it to be in conflict with,

34

and therefore preempted by, section 1396p(d)(4)(A). We decline to interpret Probate Code section 3605 in such a manner.[12]

Although Probate Code section 3605 provides that trust remainders should be treated as part of a beneficiary's estate, it does not explicitly cross-reference the estate recovery provisions of former Welfare and Institutions Code section 14009.5, except in the Law Revision Commission comment. Nothing in the legislative history explains the meaning behind the reference to treating remaining trust assets as part of a beneficiary's estate, or otherwise reflects any intention to afford the states less than full reimbursement for their Medi-Cal expenditures on behalf of deceased beneficiaries of special needs trusts.

It is notable that section 1396p (approved on August 10, 1993) did not exist at the time Probate Code section 3605 was

---

[12]     Plaintiffs also contend that special needs trusts established under Probate Code sections 3604 and 3605 are a distinct subset of special needs trusts that do not fall within the standards set forth in section 1396p(d). They provide no authority for this assertion. Instead, they focus on supposed differences between federal law governing special needs trusts and Probate Code sections 3604 and 3605, such as the stricter definition of a "disability" under Probate Code section 3604, subdivision (b)(1), than under section 1396p(d)(4)(A), to argue that trusts established under Probate Code sections 3604 and 3605 are in a class of their own. However, Plaintiffs fail to articulate how or why the purported distinctions between federal and state standards compel the conclusion that the estate recovery rules of section 1396p(b) and former Welfare and Institutions Code section 14009.5 should apply to trusts established under Probate Code sections 3604 and 3605, as opposed to the special needs trust recovery rules under section 1396p(d) and California Code of Regulations, title 22, section 50489.9.

enacted. At the time our state legislature considered and passed Probate Code section 3605, it could not have anticipated that the following year Congress would choose to crack down on what it perceived as the abusive use of trusts, such that their assets generally would be counted for purposes of Medicaid eligibility, or that Congress would choose to strike a particular bargain as to special needs trusts, making them exempt from eligibility only on the condition that at the beneficiary's death the state would recover the full amount of Medicare expenses incurred while the trust was in existence.

In interpreting Probate Code section 3605 along with the other laws applicable to the treatment of special needs trust assets, we "must consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than defeat the statute's purpose and policy." (*Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223.) "Congress intended that special needs trusts be defined by a specific set of criteria that it set forth and no others." (*Lewis, supra*, 685 F.3d at p. 347.) Congress has made plain that special needs trust assets will only be exempt for purposes of Medicaid eligibility if they will be subject to full reimbursement to the state upon the beneficiary's death, and our state has acknowledged the supremacy of federal law on such eligibility and reimbursement issues. (See *Lopez v. DaimlerChrysler Corp., supra,* 179 Cal.App.4th at p. 1380.) Adopting Plaintiffs' interpretation of Probate Code section 3605 would not be in keeping with that understanding. We thus conclude that Probate Code section 3605 permits the Department to recover for Brenda's Medi-Cal expenses.

C. *Centers for Medicare & Medicaid Services' opinion letter supports the Department's position*

As additional support for its position, the Department relies on a January 6, 2015 letter from the Centers for Medicare & Medicaid Services (CMS).[13] Due to the extraordinary complexity of the Medicaid Act, Congress delegated the administration of the Medicaid program to the Secretary of Health and Human Services, who in turn exercises his or her broad authority through CMS, previously known as the Health Care Financing Administration (HCFA). (*Ahlborn, supra,* 547 U.S. at p. 275 & fn. 3; *Olszewski, supra*, 30 Cal.4th at p. 810; *Sierra Vista Regional Medical Center v. Bontá* (2003) 107 Cal.App.4th 237, 243.)

That letter from CMS to the Department states that it is being provided "in response to questions from [Department] staff regarding the interplay between the estate recovery provision in [section 1396p(b)] and the trust provisions of [section 1396p(d)(4)]. Specifically, the Department . . . asks for confirmation that a state's right to reimbursement under the mandatory 'payback' provisions in the trusts described in [section 1396p(d)(4)] is not limited by the restrictions described in

---

[13] We deny Plaintiffs' request, submitted after briefing was complete, for us to take judicial notice of a number of "All County Letters" issued by the Department, as well as pages on the Department's website. The materials have, at best, marginal relevance to the issues before us, and in any event, Plaintiffs did not submit them to the trial court. (See *California Advocates for Nursing Home Reform v. Bontá, supra,* 106 Cal.App.4th at pp. 515-516, fn. 8.)

[section 1396p(b)(2)] that apply to a state's right to estate recovery."

The CMS letter confirms that the trust provisions of section 1396p(d)(4), including the payback provisions, are "[s]eparate and distinct from the estate recovery provisions" of [section 1396p(b)]. "To qualify as . . . a special needs trust . . . , the Act requires, among other things, that 'the State *will* receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual . . . .' [¶] Accordingly, the State Medicaid Manual at Section 3259.7 ('Exceptions to Treatment of Trusts Under Trust Provisions') provides that in order for a Medicaid beneficiary to have a trust classified as . . . a special needs trust . . . , the trust must contain a provision that directs payback to the state in accordance with the above-described provisions. A trust that does not contain the relevant payback provision language, or applies limitations on the payback beyond the ones specifically identified in the statute (those being, upon the death of the individual, up to an amount equal to the total medical assistance paid . . .) may not qualify as a [section 1396p(d)(4)] trust."

Thus, according to CMS, "[a] state's entitlement to reimbursement from trusts described in [section 1396p(d)(4)] exists independent of the estate recovery authority in [section 1396p(b)]," and "[t]he mandatory reimbursement terms in a [section 1396p(d)(4)] trust, and not the provisions of [section 1396p(b)], provide the basis for a state's reimbursement rights from such trusts." "The statutory language does not limit the states' right to reimbursement from [section 1396p(d)(4)] trusts to the services a Medicaid beneficiary receives, nor does it

38

condition the right upon the age of a trust beneficiary or absence of surviving family members, or otherwise make the states' reimbursement rights subject to [section 1396p(b)]. No limitation on a state's entitlement to reimbursement from [section 1396p(d)(4)] trusts may be imposed other than what is expressly contained in the statute."

Although Plaintiffs contend the CMS letter is not persuasive because it makes no reference to the special needs trust provisions in the Probate Code, CMS sets forth its position that states cannot impose any limitations on the right of reimbursement mandated by Congress in section 1396p(d)(4). We find the letter persuasive and afford it some deference. (See *Olszewski, supra*, 30 Cal.4th at p. 821 [policy clarification letter from HCFA regarding conflict between state law and federal Medicaid provisions was entitled to deference]; *Christensen v. Harris County* (2000) 529 U.S. 576, 587 [120 S.Ct. 1655, 146 L.Ed.2d 621] [HCFA's interpretations contained in opinion letters, as opposed to determinations after a formal adjudication or notice-and-comment rulemaking, are "entitled to respect" to the extent that they have the "power to persuade"]; *Caremark, Inc. v. Goetz* (6th Cir. 2007) 480 F.3d 779, 787 [finding CMS's interpretation of the Medicaid statutory scheme entitled to respect and some deference where it was persuasive and consistent with federal and state law].)

D. *Public policy considerations weigh in favor of permitting reimbursement to the Department*

It is well-established that "[a]llowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to

39

have more funds to provide future services.  Furthermore, if a person has assets available to pay for the benefits, then the state should be allowed to recover from those assets because that person was not fully entitled to all benefits." (*Belshe v. Hope, supra,* 33 Cal.App.4th at p. 173; see *Burke, supra*, 98 Cal.App.4th at p. 793 ["allowing the State to recover as much as possible of the costs of medical services provided to low-income persons furthers the purpose of the Medicaid and Medi-Cal programs"].)

The policy rationales are even more compelling in the case of special needs trusts that consist of the proceeds from settlements or judgments from lawsuits against third-party tortfeasors, such as medical professionals or other persons found to have negligently or intentionally caused injuries to the beneficiary.  Those proceeds are set aside for the specific purpose of meeting the medical needs of the beneficiary—and, pursuant to Probate Code section 3604, the court must find that only an amount reasonably believed to be necessary to cover medical needs is being sheltered in this trust.  Where a third party has been found liable for the beneficiary's injuries resulting in long-term medical costs, proceeds provided by the third party fairly should go towards these medical costs; only if the medical expenses prove lower than reasonably expected should those funds be distributed to the beneficiary's heirs upon the death of the beneficiary.

The policy is well-illustrated in the case before us.  Brenda had medical expenses of almost $4 million.  Had the assets in her special needs trust made her ineligible for Medi-Cal, her family may well have struggled to pay for all her special medical needs over her 21-year life.  Because she was able to qualify for Medi-Cal, the state paid almost $4 million in medical expenses on

40

her behalf, and Trust assets that originally totaled approximately $2.4 million paid for additional services and supplies that Brenda needed but were not covered by Medi-Cal.  Upon Brenda's death, there is no policy justification for the remaining $1.6 million earmarked for medical expenses to go to her heirs, as opposed to reimbursing the state to the extent possible—here, approximately 40 percent of the total medical expenses incurred.  It comports with principles of fairness to allow the Department to partially recover the healthcare payments for Brenda, so that those funds can be expended on behalf of other Medi-Cal recipients.

E. *The Trust itself requires reimbursement to the Department*

Our conclusion that the Department is entitled to be reimbursed from the Trust residual is further supported by the directives of the Trust itself.  We review de novo the proper interpretation of the trust instrument.  (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1130.)  At the termination of a trust, the trust property shall be disposed of "as provided in the trust instrument or in a manner directed by the court that conforms as nearly as possible to the intention of the settlor as expressed in the trust instrument."  (Prob. Code, § 15410, subd. (d); see *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206; *Salvation Army v. Price* (1995) 36 Cal.App.4th 1619, 1624.)

Plaintiffs seek to distinguish the Trust from the special needs trust in *Herting*, suggesting that the specific language of the trust in *Herting* justified a different outcome in that case than is warranted here.  Plaintiffs' argument is not persuasive.

The Trust provides that "[t]he Beneficiary has no interest in the income or principal of the trust, other than as set forth herein," and "because this trust is to be conserved and

41

maintained for the Special Needs of the Beneficiary, no part of the principal or income of the trust shall be construed to be part of the Beneficiary's 'estate.'" So that it would qualify as a special needs trust exempted from consideration for determining Medi-Cal eligibility, it includes the following "payback" provision: "In accordance with 42 U.S.C. § 1396p (d) (4) (A), upon termination, whether by death or otherwise, and after payment of provision has been made for expenses of administration, the remaining trust estate shall be payable to any state, or agency of a state, which has provided medical assistance to the Beneficiary under a state plan under Title XIX of the Social Security Act, up to an amount equal to the total medical assistance paid on behalf of the Beneficiary under such state plan."

The Trust could not be clearer in setting forth that none of the assets in the Trust were to be treated as part of Brenda's estate; rather, at Brenda's death, the state was entitled to full reimbursement for Medi-Cal assistance provided during Brenda's life. We reject Plaintiffs' contention that the Trust's explicit payback provision is "eviscerated" by the subsequent provision in the Trust that "[n]otwithstanding any provisions of this instrument to the contrary, this trust is subject to the provisions and requirements of California Probate Code Sections 3604 and 3605, which require that notice of the Beneficiary's death or the trust termination be given . . . to . . . [the Department]." As discussed above, we do not agree with Plaintiffs that Probate Code section 3605 prohibits reimbursement from the Trust because Brenda was under 55. We conclude that the Trust directives are in accord with the applicable laws giving the Department the right to reimbursement for its Medi-Cal expenses incurred on behalf of Brenda.

42

V. *Plaintiffs Failed To Show the Department's Claim Impermissibly Included Services Under IDEA/Lanterman Act*

Plaintiffs contend the creditor's claim submitted by the Department erroneously included expenses for special education services pursuant to the IDEA and regional center services pursuant to the Lanterman Act.

At the hearing on Plaintiffs' petition, the probate court took a practical approach to this issue, noting that the Department's creditor's claim was for almost $4 million, but the Trust remainder was only $1.6 million, which left approximately $2.4 million in services for which the Department would not be reimbursed. The court reasoned because there certainly were at least $1.6 million in legitimately claimed medical expenses included in the $4 million claim, it did not really matter if some additional expenses (for which the Department would not be reimbursed) were for special education and regional center services. Counsel for Plaintiffs essentially conceded the issue, and declined the court's offer to continue the hearing so that Plaintiffs could conduct discovery on how much, if any, of the payback request was for IDEA or Lanterman Act services. Accordingly, even if we assume that expenses for such services are not appropriately claimed by the Department from a special needs trust (a question we need not reach), Plaintiffs have failed to carry their burden to demonstrate that the $1.6 million available for reimbursement would necessarily go to reimburse the Department for any such services.[14]

_____

[14] The same logic applies to Plaintiffs' contention that the Department's claim sought recovery for services rendered before

**DISPOSITION**

The judgment is affirmed.  The Department shall recover its costs on appeal.


STONE, J.*


We concur:



PERLUSS, P. J.



FEUER, J.

---

the Trust was approved.  Even if that were true, and even if that were not permissible, the Department points out it is undisputed that over $3.9 million of the claimed services were provided *after* the Trust was created.  Given that only $1.6 million remains in the Trust, the Department will not recover its payments for the sliver of services that pre-dated the Trust.

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.