Filed 5/24/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| DANIEL MCGEE, as Trustee, etc., | C093796 |
| Plaintiff and Appellant, | (Super. Ct. No. 12PR7408) |
| v. | |
| STATE DEPARTMENT OF HEALTH CARE SERVICES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy S. Healy, Judge. Affirmed.

Law Office of Stephanie J. Finelli, Stephanie J. Finelli for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

On a petition to settle a trust accounting, the trial court disapproved certain disbursements made by the trustee of a special needs trust, and it surcharged the trustee.

1

The trustee appeals, claiming the trial court abused its discretion by imposing the wrong standard for determining whether the disbursements were for the trust beneficiary's special needs and disallowing expenditures as offsets for the surcharges.

We reverse and remand.

## FACTS AND HISTORY OF THE PROCEEDINGS

A.     Legal background

A special needs trust is a type of discretionary spendthrift trust designed "to preserve public assistance benefits for the [disabled] trust beneficiary while, simultaneously, providing for the beneficiary's 'special needs' that are not met by public assistance."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3328 (1991-1992 Reg. Sess.) as amended June 10, 1992, pp. 2-3; see Recommendation:  Special Needs Trust for Disabled Minor or Incompetent Person (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 993.)  Specifically, federal law authorizes a severely disabled individual under the age of 65 to shelter his or her assets in a safe-harbor trust established for the individual's sole benefit by the individual (the trust beneficiary), the beneficiary's parent, grandparent, or legal guardian, or by a court.  The trust assets are not considered to be the beneficiary's resources when determining whether the beneficiary qualifies to receive needs-based public assistance, in particular Supplemental Security Income (SSI) and Medi-Cal.  The beneficiary may shelter the assets in the special needs trust on condition the state will receive all amounts remaining in the trust upon the beneficiary's death or the trust's termination up to the amount of Medi-Cal benefits the state paid for the beneficiary.  (42 U.S.C. § 1396p(d)(4)(A); Prob. Code, §§ 3602, subd. (d), 3604, 3605 (statutory section citations that follow are found in the Probate Code unless otherwise stated); *Herting v. State Dept. of Health Care Services* (2015) 235 Cal.App.4th 607, 612-613; see Special Needs Trusts:  Planning, Drafting, and Administration (Cont.Ed.Bar 2022) § 1.7 (hereafter Special Needs Trusts).)

2

In addition, and subject to the terms of the special needs trust instrument, many disbursements from the trust for the beneficiary's benefit will not count as the beneficiary's income for purposes of qualifying for SSI. According to guidelines from the federal Social Security Administration in its Program Operations Manual System (POMS), disbursements from a special needs trust that are not cash or for food or shelter for the beneficiary and are payments made to third parties are generally not income to the beneficiary. Such disbursements may include, but are not limited to, "those made for educational expenses, therapy, transportation, professional fees, medical services not covered by Medicaid, phone bills, recreation, and entertainment." (POMS § SI 01120.200E.1.c.; Special Needs Trusts, *supra*, § 14.50; see POMS § SI 01120.203 on qualifications for a special needs trust.)[1]

In addition, disbursements made to a third party that result in the beneficiary receiving non-cash items (other than food or shelter) are not income or resources to the beneficiary if those items would become exempt resources when they are retained into the following month. (POMS § SI 01120.201I.1.c.; Special Needs Trusts, *supra*, § 14.51.) Such exempt resources include a home; an automobile; household goods such as furniture, appliances, electronic equipment, and dishes; and personal effects such as personal jewelry, personal care items and clothing, pets, cell phones, and educational and recreational items. (20 C.F.R. §§ 416.1212, 416.1216, 416.1218 (2023); POMS §§ SI 01130.430, SI 00815.550; SI 01110.210; Special Needs Trusts, § 14.63.)

B.     Facts and history of the proceedings

In 2012, the trial court established a special needs trust for the benefit of Dianna McGee (the beneficiary) as part of a settlement in a medical malpractice action. The

---

[1]     Although the POMS guidelines "are not products of formal rulemaking, they nevertheless warrant respect . . . ." (*Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler* (2003) 537 U.S. 371, 385 [].)

court found that the beneficiary is disabled because she suffers from "short bowel syndrome which substantially impairs her ability to provide for her own care or custody and constitutes a substantial handicap[.]" The beneficiary receives her nourishment via a feeding tube administered several times a day. The beneficiary's condition appears to be permanent, and she is not expected to experience significant improvement in the future. The court found that the beneficiary is likely to have special needs related to the disability "that will not be met without this trust[.]"

The trust instrument states the trust's purposes are as follows:

"The intent and purpose of this trust is to provide a discretionary, spendthrift trust, to supplement public resources and benefits when such resources and benefits are unavailable or insufficient to provide for the Special Needs of the Beneficiary. As used in this instrument, the term 'Special Needs' means the requisites for maintaining the Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any public agency, office, or department of the State of California, or of any other state, or of the United States of America. The funds of the trust may be used as an emergency or backup fund secondary to public resources. Special Needs include without limitation special equipment, programs of training, education and habilitation, travel needs, and recreation, which are related to and made reasonably necessary by this Beneficiary's disabilities. This is not a trust for the support of the Beneficiary. All payments made under this Trust must be reasonably necessary in providing for this Beneficiary's special needs, as defined herein."

The instrument authorized the trustee to distribute from the trust "to or for the benefit of the Beneficiary during her lifetime, such sums and at such times as the Trustee, in her discretion, determines appropriate and reasonably necessary for the Beneficiary's Special Needs. In making distributions to the Beneficiary for her Special Needs, the Trustee shall take into consideration the applicable resource and income limitations of the

4

public assistance programs for which the Beneficiary is eligible, and the duties of any persons legally obligated to support the Beneficiary."

We infer, however, that the trustee was not prohibited from making distributions that would affect the beneficiary's eligibility for SSI and Medi-Cal. The trust instrument states: "If the Trustee determines that it is in the best interest of the Beneficiary to make a disbursement which will cause a reduction or elimination of the Beneficiary's right to receive public benefits, the Trustee shall not be liable for having caused the loss of such benefits."

The original trustee filed first and second accountings in 2013 and 2014, respectively, and the trial court approved each.

The successor trustee, plaintiff and appellant Daniel McGee (trustee), filed a third account and petition for settlement in 2016. The state Department of Health Care Services filed an objection to the accounting, contending the trustee had used trust funds to make multiple unnecessary purchases. Following hearings, the trial court rejected the accounting in part. It found that trust funds had been spent on the beneficiary's behalf for matters which did not qualify as "special needs" under the trust instrument.

The trial court stated that whether an expenditure will be reimbursable "depends upon the facts of each case and each expenditure under the terms of the specific involved Special Needs Trust." Special needs trusts, while defined under the law generally, were "more specifically defined by the SPECIAL NEEDS of the specific beneficiary under terms of a specific special needs trust." The court found that several trust expenditures did not fall under the terms of the beneficiary's special needs trust or even under the law in general.

The court disallowed over $13,000 in trust disbursements for food for the beneficiary and others. Food for the beneficiary must be required by prescription or some set of defined parameters, none of which was presented to the court. Also, buying food for caregivers while traveling was not a special need for the beneficiary.

The court disallowed over $39,000 in disbursements for the beneficiary's animals and their care. The trustee did not establish that the beneficiary used the animals as therapy animals or for some other qualifying purpose, or that their use was related to the beneficiary's special needs.

The court disallowed over $14,000 of distributions for such things as interest paid on credit cards, donations, taxes, jewelry and clothing, gifts, and other miscellaneous items. The court ultimately surcharged the trustee in the amount of $73,000. The trustee did not appeal from this order.

The trustee filed a fourth account and petition for settlement in 2019. This accounting covered the time of December 1, 2015, through November 30, 2017. The trustee stated he had returned to the trust $20,800 in partial payment of the sanctions the court imposed on him. He also asked the trial court to reduce his sanctions by the amount the trust owed him for his services during the accounting period and which he would agree not to receive.

At the first hearing on the account, the trial court requested a spreadsheet identifying all charges and especially identifying the credit card charges paid by the trust. The trustee filed a declaration including a spreadsheet of all the trust's expenditures and their purposes and the credit card statements.

In the declaration, counsel for the trustee stated that during the third accounting period, the beneficiary had contributed $32,617.15 in her personal funds to the trust to be used by the trustee to pay for goods and services for her benefit. $20,000 of that amount were the proceeds of a separate worker's compensation award, and $12,617.15 were funds the beneficiary received as partial payment for losses she had incurred in the Butte Fire. Counsel asked that these funds be credited as an offset for any sanctions the court would impose on the trustee.

Counsel also declared that during the fourth accounting period, the beneficiary made additional contributions by making personal payments on her credit cards totaling

6

$41,241.42. Counsel asked that those expenditures also be used to offset the sanctions imposed on the trustee.

In addition, counsel asked the trial court to allow as special needs trust expenses the sum of $13,961.78 spent to replace and rebuild animal shelters, fencing, and landscaping which were destroyed in the Butte Fire. Counsel asked the court to treat this expenditure as an offset to any further sanctions the court may impose on the trustee.

The trial court continued the matter to allow the trustee to provide more information to the court. The court asked for information on the costs incurred for the beneficiary's vehicles, including the number of miles traveled. It also asked for explanations on some of the expense categories and some of the expenses contained in the spreadsheet. The trustee filed a supporting declaration in response.

Following a hearing, the trial court issued its ruling on the fourth account on January 21, 2021. The court stated its obligation was to ensure that trust expenditures were appropriate under the terms of the special needs trust and the law governing special needs trusts in general. "If these expenditures fall outside the very limited purpose of being utilized for the beneficiary's special needs as created by the limitations due to her condition[,] and reimbursement was already made[,] the Trustee will be tasked with repaying the reimbursements to the trust in the form of a Surcharge." Whether an expenditure will be reimbursed "depends upon the facts of each case and each expenditure under the terms of the specific Special Needs Trust." Applying these standards, the court rejected the accounting in part and imposed additional surcharges on the trustee.

The court initially rejected the trustee's request that funds which the beneficiary contributed to the trust during the third accounting period be used to offset the trustee's surcharges for that period. The matter of the third accounting was closed, as time to appeal the ruling had expired. And arguing that money spent by the beneficiary for her own benefit accrues to offset future surcharges was inappropriate.

7

Similarly, the court rejected the trustee's request that the beneficiary's payments on her credit cards during the fourth accounting period be used to offset surcharges incurred in the third accounting period or any future surcharges. It was impossible to credit the beneficiary's payments to offset the surcharge because there was no evidence showing whether the payments made were for reimbursable expenses or where the funds originated. Further, "[a]ny money paid by the beneficiary to a credit account for items she purchased for her benefit, without more, would, based on common sense, appear to simply be payments made by the beneficiary for items she acknowledges were not reimbursable by the Trust in the first place."

The court disallowed several categories of expenditures similar to those it disallowed in the third accounting as falling outside the terms of the trust. It disallowed $8,888.37 in expenditures for food for the beneficiary and caregivers who traveled with her, and $12,128.17 in expenditures for animals not shown to have been used for a qualifying purpose after the special needs trust was created. It ruled there was insufficient evidence for it to approve nearly $23,000 in expenditures for automobile use and gas, gifts, donations, furniture, lamps/rugs, and décor as specifically related to the beneficiary's special needs. The court also disallowed $22,172.83 in expenditures for taxes, utilities, vehicle maintenance, insurance, a mortgage, and a construction company. The court surcharged the trustee a total of $59,168.86.

The court refused to allow the trustee to pay the trust for the fourth accounting period surcharges by way of forbearing payment for his services. It ordered the trustee to pay the fourth accounting surcharge in full within two years.

Before us on appeal, the trustee contends the trial court misinterpreted the terms of the trust as narrower than intended and abused its discretion in disallowing expenses and offsets for the surcharges.

8

## DISCUSSION

### I

### *Definition of "Special Needs"*

The trial court determined that the trustee abused his discretion and breached the terms of the trust instrument by making distributions for items and services that did not constitute "special needs" as defined by the instrument. To resolve this appeal, we must determine the meaning of the phrase "special needs" as used in the instrument.

Whenever a trustee's exercise of discretion is challenged, the basic inquiry "is always whether the trustee acted in the state of mind contemplated by the trustor." (*Estate of Traung* (1962) 207 Cal.App.2d 818, 835.) The trustor's intent is discerned from the trust instrument. The trustor's intent "as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (§ 21102, subd. (a).)

Absent a conflict in relevant extrinsic evidence, the interpretation of a trust instrument is a question of law which we consider de novo. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) "In interpreting the trust instrument, we seek the intent of the trustors as revealed in the document considered as a whole." (*Id.* at p. 1440.) We interpret the instrument to give every expression some effect and not render any expression inoperative. (§ 21120.) We give preference to an interpretation that will prevent a failure of a transfer. (§ 21120.) We construe all parts of the instrument in relation to each other to form, if possible, a consistent whole. (§ 21121.) We give the instrument's words their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained. (§ 21122.)

Also, " 'a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463, quoting *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.)

The trial court interpreted the term "special needs" to refer only to "the beneficiary's special needs as created by the limitations due to her condition," and it imposed a surcharge for any expenditures that fell outside this "very limited purpose." The court likely based its interpretation on one sentence from the trust instrument's definition of special needs. That sentence reads, "Special Needs include without limitation special equipment, programs of training, education and habilitation, travel needs, and recreation, which are related to and made reasonably necessary by this Beneficiary's disabilities."

Interpreting the instrument as a whole and in its legal context, we conclude the trial court's interpretation is overly narrow. The instrument defines special needs broadly. It declares that the phrase "special needs" means "the requisites for maintaining the Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any public agency[.]" Health, safety, and welfare address more than just expenses arising from the beneficiary's disability, and many of those expenses would not be paid by a public agency.

Another indication that "special needs" should be interpreted broadly is the instrument's statement that the trust is not for the beneficiary's support. "Under a support trust, the trustee is directed to pay no more than is necessary for the education or support of the beneficiary." (*Ventura County Dept. of Child Support Services v. Brown* (2004) 117 Cal.App.4th 144, 150, italics omitted.) The purpose of the trust here is "to supplement public resources and benefits when such resources and benefits are unavailable or insufficient to provide for the Special Needs of the Beneficiary." Because the trust is not a support trust, the trustee is authorized to make trust distributions in his discretion for more than just the beneficiary's support.

The trial court's reliance on the phrase "which are related to and made reasonably necessary by the Beneficiary's disabilities" to interpret special needs does not account for the use in that sentence of the phrase "including without limitation." That phrase means

10

including with no limit or restriction. (See Black's Law Dict. (11th ed. 2019) limit, limitation, without.) The phrase could have been rendered in the more familiar "including but not limited to," which has the same meaning. So understood, the phrase in the trust instrument means that special needs include, but are not limited to, the listed items that are related to the beneficiary's disability. It does not mean that only items or services related to the beneficiary's disability qualify as special needs.

This interpretation is consistent with what little legal interpretation of and commentary on special needs trusts exists. When Congress enacted the statute authorizing special needs trusts, it did not define the term "special needs." The few authorities that have addressed it, however, have defined the term beyond just care required because of a disability. Placing special needs trusts in their legislative context, the federal Third Circuit Court of Appeals stated, "Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility. But Congress also excepted from that rule three types of trusts meeting certain specific requirements. Taken together, these are generally called 'special needs trusts' or 'supplemental needs trusts.' 'A supplemental needs trust is a discretionary trust established for the benefit of a person with a severe and chronic or persistent disability and is intended to provide for expenses that assistance programs such as Medicaid do not cover.' (*Sullivan v. County of Suffolk* (2d Cir. 1999) 174 F.3d 282, 284 (internal quotation marks omitted).) These expenses—books, television, Internet, travel, and even such necessities as clothing and toiletries—would rarely be considered extravagant." (*Lewis v. Alexander* (3d Cir. 2012) 685 F.3d 325, 333.)

One treatise states, "A special needs trust gives the trustee broad discretion to distribute trust income and/or principal for the 'special needs' of the beneficiary. 'Special needs' are basically defined as anything the beneficiary needs, or anything that would be useful or in any way helpful to the beneficiary, if it is not paid for or provided to the beneficiary from a public assistance benefit program or some other source."

(2 Dayton et al., Advising the Elderly Client (2022) Supplemental Security Income Eligibility and the Special Needs Trust, § 16:110.)

A California treatise explains special needs in more detail: "The term 'special needs' suggests a category of needs that is narrow or somehow limited in scope. However, just the opposite is true. The term 'special needs' is distinguished from 'basic needs,' that is, needs for food, shelter, and medical care, which public benefits like SSI and Medi-Cal are intended to cover. 'Special needs' then encompasses the very broad range of everything else a human being needs in order to live, thrive, and realize his or her potential in life." (Special Needs Trust, *supra*, § 11.18.)

"If the trustee avoids distributions for in-kind support and maintenance (ISM) [food or shelter provided directly to the beneficiary or paid by a third party such as the trust], 'special needs' still include the entire universe of a person's goods and services *except* for food and shelter (to be covered by SSI) and medical care (to be covered by Medi-Cal). So 'special' in this context is actually quite general." (Special Needs Trusts, *supra*, § 10.9B, original italics.)

Indeed, the Third Circuit struck down as preempted by the federal statute a Pennsylvania statute that attempted to limit the distribution of assets from a pooled special needs trust to products and services that were related to the beneficiary's disability. "Congress did not include any requirement that proceeds from a special needs trust be used solely for treatment of the beneficiary's disability. Starting from the assumption that Congress intended to exempt all legally constituted trusts meeting the requirements of 42 U.S.C. § 1396p(d)(4) from counting against Medicaid eligibility, and did not intend to permit additional restrictions beyond those it specified, the special needs requirement of [the state statute] transgresses congressional intent. We hold it preempted by federal law." (*Lewis v. Alexander, supra*, 685 F.3d at pp. 350-351.) Our interpretation of "special needs" in the trust instrument is consistent with the Third Circuit's definition of special needs as used in the federal statute.

Our interpretation of the trust instrument is also consistent with how the Social Security Administration treats special needs trusts. When determining whether the special needs trust beneficiary qualifies for SSI, the Administration does not exclude from its calculations only trust assets and distributions that are related to the disability. The Administration also excludes household goods and personal effects from the beneficiary's countable resources regardless of their dollar limit. (42 U.S.C. § 1382b(a)(2), (3); POMS § SI 01130.430B.)

The Social Security Administration defines household goods as "items of personal property, found in or near the home, [which] the householder uses on a regular basis" and which are not held or acquired because of their value or investment. (POMS § SI 01130.430C.1., C.1.b.) "The householder needs household goods for maintenance, use, and occupancy of the premises as a home." (POMS § SI 01130.430C.1.) Examples of excluded household goods include furniture, appliances, electronic equipment such as computers and televisions, carpets, cooking and eating utensils, and dishes. (POMS § SI 01130.430C.1.a.)

The Social Security Administration defines excluded personal effects as "items of personal property ordinarily worn or carried by the individual, or items that have an intimate relation to the individual" and which are not held because of their value or as an investment. (POMS § SI 01130.430C.2, C.2.c.) Examples of excluded personal effects include jewelry, including wedding and engagement rings; personal care items and clothing; pets, such as a cat, dog, hamster, horse, monkey, or snake; educational or recreational items, such as books, musical instruments, or hobby materials; and items of cultural or religious significance to the individual, such as ceremonial attire. (POMS § SI 01130.430C.2.a.) Personal effects *also include* items required because of an individual's physical or mental impairment, such as prosthetic devices or wheelchairs. (POMS § SI 01130.430C.2.b.)

Because the trust instrument defines "special needs" broadly as including more than just items or services reasonably related to the beneficiary's disability, and because that definition is consistent with the interpretation of the federal statute and the Social Security Administration's treatment of special needs trusts, we conclude the trial court abused its discretion by applying the wrong legal standard when it defined "special needs" more narrowly than allowed under the trust instrument and special needs trust law in general.

## II

### *Determining Whether the Trustee Abused its Discretion*

Because the trial court abused its discretion by applying the wrong definition of special needs, we must remand for the court to exercise its discretion under the proper standard. In reaching this conclusion, however, we do not mean to be understood as holding that the trust instrument placed no limits on the types of distributions the trustee could make.

The trust instrument did not vest the trustee with sole or absolute discretion to make distributions. Instead, the instrument requires all distributions to be "reasonably necessary in providing for this Beneficiary's special needs, as defined herein." The trustee may make distributions to or for the beneficiary's benefit in such sums and at such times as the trustee in his discretion determines are "appropriate and reasonably necessary for the Beneficiary's Special Needs."

This is consistent with the statutory standard of care imposed on a trustee who does not hold absolute discretion. Such a trustee must administer the trust "with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." (§ 16040, subd. (a).) Discretionary power conferred on the trustee "is not

14

left to the trustee's arbitrary discretion, but shall be exercised reasonably." (§ 16080.) A trustee "also has a fiduciary duty to act in good faith in the exercise of any discretionary powers conferred on the trustee by the trust instrument." (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 888; § 16081, subd. (a).)

The trust instrument requires the trustee when making distributions to take into consideration the resource and income limitations of public assistance programs such as SSI and Medi-Cal for which the beneficiary is eligible. The purpose of the special needs trust is to preserve the beneficiary's eligibility for public assistance while allowing the trust to supplement those benefits when they are unavailable or insufficient to meet the beneficiary's special needs. The trustee may make distributions that reduce or eliminate the beneficiary's eligibility for public benefits, but only if he independently determines such distributions would be in the beneficiary's best interest. Thus, when the trustee makes a distribution, he must be able to show the court that the distribution did not reduce or eliminate the beneficiary's eligibility for public benefits by providing income or countable resources to the beneficiary. If the distribution would reduce or eliminate the beneficiary's eligibility, the trustee must be able to show that such distributions were in the beneficiary's best interest and the trustee acted in good faith.

For example, the Social Security Administration does not exclude all personal property from being considered as a resource for purposes of SSI. Some items that are not excluded include a second automobile used for transportation; gems; jewelry that one does not wear or does not hold for family significance; animals for investment purposes, such as a horse or dog for breeding, for resale, or investment; and collectibles. (POMS §§ SI 01130.200, SI 01130.430D.1 & 2.) Trust distributions for these types of items may be outside the scope of the trustee's discretion unless they are in the beneficiary's best interest.

Other types of disbursements may affect the beneficiary's eligibility for public benefits. For example, payments of cash or cash equivalents to the beneficiary will be

15

counted as income. (POMS § SI 01120.200E.1.a.) "[A] distribution of food or shelter will reduce (or eliminate) a beneficiary's SSI, and a distribution for medical care already covered by Medi-Cal will reduce (or eliminate) a beneficiary's Medi-Cal eligibility. Further a distribution of food or shelter, or payment of utilities, if counted as a form of in-kind income, may have an impact on Medi-Cal eligibility or benefits that arise from Medi-Cal programs that count income." (Special Needs Trusts, *supra*, § 10.9B; POMS § SI 01120.200E.1.b.) Also, payments made to third parties for goods and services that are not for the primary benefit of the beneficiary may, except in certain circumstances, violate the SSI requirement that a special needs trust be established for the sole benefit of the disabled beneficiary. (POMS § SI 01120.201F.3.a.)

We recognize "[i]t is the general rule that if the power of the trustee is discretionary, and the trustee is fairly employing his judgment to advance or not to advance, the court will not control his action merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere. [Citation.] The court should not be burdened with the duty of administration, nor required, nor permitted to substitute its judgment and discretion for that of the trustee so long as it acts within proper limits; nor in any event until there is an entire failure or refusal on the part of the trustee to perform its duty." (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 662.)

Nonetheless, a trial court is not expected simply to rubberstamp a special needs trust accounting. Its discretion when reviewing and settling a trust accounting includes enforcing the terms of the trust. While the trustee's discretion under the special needs trust before us is broad, it is not unlimited or absolute. The trustee must operate consistently with SSI rules for resources and incomes unless the beneficiary's best interest requires otherwise. That must be the emphasis of the accounting on remand.

16

## III

### *Miscellaneous Arguments*

The trustee contends the trial court abused its discretion by (1) denying distributions based on the trustee's not having invested the trust's assets; (2) denying distributions to which the beneficiary did not object; (3) denying distributions when the trustee had adequately explained the distributions' purposes; and (4) disallowing offsets for surcharges.

Because we are remanding, we need not address these arguments, as further proceedings before the trial court may render these issues moot.

### DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion. Trustee shall bear his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

 

 

_____

HULL, Acting P. J.

 

We concur:

 

_____

MAURO, J.

 

_____

BOULWARE EURIE, J.

17